UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BONNIE S. DUMAS,

                                    Plaintiff,

v.                                                              7:13-CV-01099
                                                                (GTS/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                              OF COUNSEL:

CONBOY, McKAY, BACHMAN              LAWRENCE D. HASSELER, ESQ.
   & KENDALL, LLP
*Counsel for Plaintiff*
307 State Street
Carthage, New York 13619


HON. RICHARD S. HARTUNIAN            SERGEI ADEN, ESQ.
United States Attorney for the            Special Assistant United States Attorney
   Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL          STEPHEN P. CONTE, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

    This matter was referred to the undersigned for report and recommendation by the

Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b)

(2013) and Northern District of New York Local Rule 72.3(d).  This case has proceeded in

accordance with General Order 18 of this Court which sets forth the procedures to be followed

when appealing a denial of Social Security benefits.  Both parties have filed briefs.  Oral

argument was not heard.  For the reasons discussed below, the Court recommends that this case

be remanded for further administrative proceedings.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is presently fifty-five years old with a birth date of March 22, 1959.

(Administrative Transcript at 38.)[1]  Plaintiff completed high school and did not attend college.

(T. at 39.)  Plaintiff has never had a driver's license.  (T. at 39.)  Plaintiff's last employment was

in June of 2009.  (T. at 40.)  She worked as a dishwasher and then line cook at a casino in

Ogdensburg, New York for four years.  (T. at 40.)   Plaintiff's employment at the casino was

terminated by her employer after she made a comment that offended someone who had overheard

it.  (T. at 41, 55.)  Before working at the casino, Plaintiff was employed for fifteen years as a

plastics assembler.  (T. at 41.)  The job ended when the business closed.  (T. at 41-42.)   Plaintiff

alleges disability due to colitis; arthritis in both shoulders, left hip and left knee; pain in her lower

back from bone spurs on her lower spine; neck pain; leg and balance problems; and mental health

related problems.  (T. at 42-46.)

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on

July 17, 2009, alleging disability as of June 26, 2009.  (T. at 138-141, 145-148.)  Both

applications were initially denied on December 15, 2009.  (T. at 65-70.)  Plaintiff requested a

---

[1]  The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative
Transcript will be referenced as "T" herein.

hearing before an Administrative Law Judge ("ALJ") on January 5, 2010. (T. at 74.) The

hearing was held before ALJ Ramos on July 6, 2011. (T. at 34.) ALJ Ramos denied the

application in a decision dated July 21, 2011. (T. at 19-28.) Plaintiff's last date insured, based

upon her earnings record, is December 31, 2013. (T. 21.) The ALJ's decision became the final

decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on

July 22, 2013. (T. at 1-4.) Plaintiff commenced this timely action in the United States District

Court for the Northern District of New York on September 6, 2013. (Dkt. No. 1.)

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he or she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2013). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.) "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.* (quoting *Perez,* 77 F.3d at 46).

**B.      Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010)[2]; *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). If supported by substantial

---

[2] On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Commissioner of Social Security*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55322 (N.D.N.Y. May 17, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Ross v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado,* 805 F. Supp. at 153. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 26, 2009. (T. at 21.) At step two, the ALJ found that Plaintiff had severe impairments consisting of depressive disorder, social phobia, COPD, colitis, mild degenerative joint disease of the left hip, left knee, and right shoulder, and thoracic scoliosis. *Id.* He then found at step three that Plaintiff's impairments did not meet or medically equal the severity of listed impairments 1.02 (Major dysfunction of a joint(s)), 1.04 (Disorders of the Spine), 3.02 (Chronic pulmonary insufficiency), 5.06 (Inflammatory bowel disease), 12.04 (Affective Disorders), and 12.06 (Anxiety Related Disorders) in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). (T. at 23.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and concluded that she retained the ability to "occasionally lift/carry 20 pounds and frequently 10 pounds, sit for 6 hours in an 8-hour workday, stand/walk for 6 hours in an 8-hour workday and can occasionally engage in postural activities." (T. at 24.) Additionally, the ALJ found Plaintiff "should avoid concentrated exposure to respiratory irritants and have access to bathroom facilities as needed." *Id.* He found that Plaintiff "retains the ability to understand and

follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others, but should have limited contact with supervisors, coworkers, or the public[;] and can handle reasonable levels of stress associated with simple work." *Id.*

At step four of the five-step analysis, the ALJ found that Plaintiff was not disabled because she was able to perform her previous relevant work as a dishwasher as performed by her. (T. at 27.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by (1) failing to determine that Plaintiff's mood disorder is of listing-level severity; (2) failing to lend proper weight to the opinion of Plaintiff's treating physicians; (3) failing to follow the special technique required for assessing a mental disorder; (4) failing to follow the required procedure in assessing Plaintiff's RFC; (5) failing to properly assess Plaintiff's subjective allegations of pain and disabling symptoms; and (6) concluding that Plaintiff could return to her past relevant work.  (Dkt. No. 10.)

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence, and thus should be affirmed.  (Dkt. No. 11.)

## V.    DISCUSSION

### A.    ALJ's Step Three Assessment of Plaintiff's Mood Disorder

Plaintiff does not dispute the ALJ's step two identification of her severe impairments on this appeal.  (T. at 22.)  She does argue that the ALJ erred in his step three finding that her mood disorder (depressive disorder) does not meet or medically equal Listing 12.04 in the listed

impairments in Appendix 1. (Dkt. No. 10 at 13-16.)

The inquiry at step three is whether, based solely on medical evidence, the claimant has an impairment noted in the Listings in Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has one of the listed impairments, the Secretary will consider the claimant disabled without looking at vocational factors, and the claimant will automatically be entitled to benefits. *Id.* §§ 404.1520(d), 416.920(d). The Secretary presumes that someone with a listed impairment is unable to perform substantial gainful activity. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

"Under the regulations, the ALJ's determination as to whether the claimant's impairment meets or equals the Listings must reflect a comparison of the symptoms, signs, and laboratory findings about the impairment, as shown in the medical evidence, with the medical criteria as shown with the listed impairment." *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002) (citing 20 C.F.R. § 404.1526). However, the burden is on the claimant to present medical findings that show his or her impairments match a listing or are equal in severity to a listed impairment. If a claimant's impairment manifests only some of the criteria in the listing, no matter how severely, the impairment does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In cases in which the disability claim is premised upon one or more listed impairments of Appendix 1, "the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." *Berry*, 675 F.2d at 469. While a court may be able "to look to other portions of the ALJ's decision" and to "credible evidence in finding that his determination was supported by substantial evidence," the Second Circuit has noted that "[c]ases

may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record . . . . In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision." *Id.* (citations omitted). Thus, while an ALJ is not obligated to address specifically each piece of evidence in his decision, *Jones v. Barnhart*, No. CV-04-2772 (FB) (VVP), 2004 WL 3158536, at *6, 2004 U.S. Dist. LEXIS 1724, at *15 (E.D.N.Y. Feb. 3, 2005), he is not excused "from addressing an issue central to the disposition of the claim." *Ramos v. Barnhart*, No. 02 Civ. 3127 (LAP) (GWG), 2003 WL 21032012, at *10, 2003 U.S. Dist. LEXIS 7463, at *29 (S.D.N.Y. May 6, 2003) ("We of course do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary, but we do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.") (quoting *Ferraris*, 728 F.2d at 587 (internal quotation marks omitted).

While the ALJ's step three analysis of whether Plaintiff has a listed impairment under Listing 12.04 is sparse at best,[3] the Court finds his determination that she does not have a listed impairment is supported by other portions of his decision and substantial evidence in the record and is not the product of legal error. *See Berry*, 675 F.2d at 469 (finding that a court can look to other portions of the ALJ's decision and credible evidence in the record in determining whether

---

[3] Plaintiff claims the ALJ failed to apply the special technique to be applied in claims involving mental impairment in his step three analysis. (Dkt. No. 10 at 22-23.) The technique requires, among other things, that a reviewing authority who has found that a claimant has a medically determinable mental impairment rate the degree of functional limitation resulting from the impairment in the areas of "(1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace." *Kohler,* 546 F.3d at 266; 20 C.F.R. § 404.1520a(c)(3). Plaintiff does not contend that the ALJ failed to include the requisite ratings, only that his ratings were not in accord with her testimony and the medical evidence in the record. (Dkt. No. 10 at 22-23.)

the ALJ's determination is supported by substantial evidence).

     1.    Listing 12.04

Listing 12.04 in Appendix 1 covers affective disorders described as "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." Listing 12.04 states that "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." Appendix. 1, § 12.04. These requirements are:

    A.    Medically documented persistence, either continuous or intermittent, of one of the following:

        1.    Depressive syndrome characterized by at least four of the following:

            a.    Anhedonia or pervasive loss of interest in almost all activities; or

            b.    Appetite disturbance with change in weight; or

            c.    Sleep disturbance; or

            d.    Psychomotor agitation or retardation; or

            e.    Decreased energy; or

            f.    Feelings of guilt or worthlessness; or

            g.    Difficulty concentrating or thinking; or

            h.    Thoughts of suicide; or

            i.    Hallucinations, delusions, or paranoid thinking; or

2.	Manic syndrome characterized by at least three of the following:

    a.	Hyperactivity; or

    b.	Pressure of speech; or

    c.	Flight of ideas; or

    d.	Inflated self-esteem; or

    e.	Decreased need for sleep; or

    f.	Easy distractability; or

    g.	Involvement in activities that have a high probability of painful consequences which are not recognized; or

    h.	Hallucinations, delusions, or paranoid thinking;

or

3.	Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B.	Resulting in at least two of the following:

1.	Marked restriction of activities of daily living; or

2.	Marked difficulties in maintaining social functioning; or

3.	Marked difficulties in maintaining concentration, persistence, or pace; or

4.	Repeated episodes of decompensation, each of extended duration;

OR

C.     Medically documented history of a chronic affective
       disorder of at least 2 years' duration that has caused more
       than a minimal limitation of ability to do basic work
       activities, with symptoms or signs currently attenuated by
       medication or psychosocial support, and one of the
       following:

       1.     Repeated episodes of decompensation, each
              of extended duration; or

       2.     A residual disease process that has resulted
              in such marginal adjustment that even a
              minimal increase in mental demands or
              change in the environment would be
              predicted to cause the individual to
              decompensate; or

       3.     Current history of 1 or more years' inability
              to function outside a highly supportive
              living arrangement, with an indication of
              continued need for such an arrangement.

*Id.*

### 2.     ALJ's Paragraph B Ratings and Paragraph C Determination

The "paragraph A" criteria "substantiate medically the presence of a particular mental

disorder." Appendix 1, § 12.00.A. Evidence of the presence of a mental impairment, even one

for which treatment is received, has been found insufficient by itself to show that the impairment

limited a claimant's ability to perform work activities. *See DiPalma v. Colvin*, 951 F. Supp. 2d

555, 569 (S.D.N.Y. 2013) (collecting cases); *Cornell v. Astrue*, 764 F. Supp. 2d 381, 402

(N.D.N.Y. 2010) ("It is of course true that the mere presence of a disease or impairment alone is

insufficient to establish disability; instead, it is the impact of the condition, and in particular any

limitations it may impose upon the ability to perform basic work functions, that is pivotal to the

disability inquiry.") (citations omitted).

The ALJ found that Plaintiff has a depressive disorder. However, he concluded that Plaintiff's mental impairments did not meet or equal all of the specified criteria in Listing 12.04 based upon his analysis of the "paragraph B" criteria. To satisfy the criteria in "paragraph B," the mental impairments must result in at least two of the following: "(1) Marked restriction of activities or daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace;" or must result in "Repeated episodes of decompensation, each of extended duration." (Appendix 1 at 12.04(B)). Applying the special technique for mental impairments set forth in 20 C.F.R. § 1520a, the ALJ rated Plaintiff's activities of daily living, social functioning, and concentration, persistence, or pace on a scale of "[n]one, mild, moderate, marked, and extreme." *See* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

The ALJ concluded that Plaintiff has a mild restriction in activities of daily living based upon her testimony that she watches television and reads during the day. (T. 23.) The ALJ also relied upon the findings of Kristen Barry, Ph.D., who consultatively examined Plaintiff in November of 2009 and noted in her report that Plaintiff did laundry and was able to attend to her personal needs. (T. at 23.) *See Grewen v. Colvin*, No. 1:11-CV-829 (FJS), 2014 WL 1289575, at *7, 2014 U.S. Dist. LEXIS 41260, at * 20 (N.D.N.Y. Mar. 27, 2014) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of Social Security disability.") (citation and internal quotation marks omitted). The ALJ found further support for his determination that Plaintiff has a mild restriction in activities of daily

13

living in the December 10, 2009, psychiatric review of non-examining consultant, State Agency Disability Review Psychologist M. Totin, who rated Plaintiff's restrictions of daily living as mild.[4] (T. at 371.)

The ALJ concluded that Plaintiff has moderate difficulties in social functioning. (T. at 23.) His assessment was based on Plaintiff's testimony that she does not get along with co-workers or supervisors; Dr. Barry's psychiatric evaluation indicating that Plaintiff has only a few friends and would rather not socialize with others but has good family relationships (T. at 347); and the Plaintiff's disability function report of August 10, 2009, stating that she does not like to talk to people when she is depressed or anxious because she gets mean so she stays to herself. (T. at 183.)

The ALJ concluded that Plaintiff has mild difficulties with regard to maintaining concentration, persistence, or pace. (T. at 23.) In reaching that conclusion, the ALJ relied upon the psychiatric evaluation of Dr. Barry[5] (T. at 345-48) and Dr. Totin's mental residual function assessment on Plaintiff. (T. at 375-77.) Dr. Barry noted that Plaintiff has reading as a hobby and found her thought processes to be coherent and goal directed; found her to be oriented to person, place, and time; and found her attention and concentration to be "grossly intact." (T. at 346-47.) Dr. Totin found Plaintiff's abilities to carry out very short and simple instructions; maintain

---

[4] "If an ALJ relies on a nonexamining reviewer's opinion, that opinion must be supported by other evidence in the record." *See Grewen*, 2014 WL 1289575, at *7 (internal citations and quotation marks omitted). Dr. Totin's rating is supported by both the Plaintiff's testimony and Dr. Barry's report.

[5] It is apparent that the ALJ intended to cite to Dr. Barry's psychiatric evaluation, Exhibit 11F, rather than Exhibit 11E, which is a letter from Plaintiff's counsel to the Appeals Counsel (T. at 224) as support for his rating.

attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; complete a normal work day and work week without interruption from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods were not significantly limited. (T. at 375-76.) *See Grewen*, 2014 WL 1289575, at * 7 (ALJ may rely upon the opinions of both examining and non-examining State agency medical consultants).

The ALJ also found that Plaintiff had not suffered any episodes of decompensation of extended duration, and Plaintiff has not disputed that finding. (Dkt. No. 10 at 17; T. at 24.) Plaintiff does dispute the ALJ's determination that the evidence fails to establish the Listing § 12.04 "paragraph C" criteria. (Dkt. No. 10 at 17-18; T. at 25.)

### 3.    Plaintiff's Treating Physician Argument With Regard to Dr. Nelson

Plaintiff relies largely on the June 15, 2011, Medical Disability Evaluation for Mental Disorders ("Curley Evaluation"), confirmed and electronically signed by Licensed Master Social Worker ("LMSW"), Athena M. Curley (T. at 493-501), in arguing that the ALJ erred in failing to find that her mood disorder was of listing severity under Listing 12.04. (Dkt. No. 10 at 15-16.) Plaintiff contends that the Curley Evaluation was the joint product of LMSW Curley and Dr. Sarah Nelson, a specialist in neuropsychiatry, and that the ALJ erred in failing to give controlling weight to the opinion of Dr. Nelson, as Plaintiff's treating physician, in his "paragraph B" ratings, as required by the treating physician rule. (Dkt. No. 10 at 15-16, 18.) The Court disagrees. Under the treating physician rule, the medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals. "If . . . a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory

15

techniques and is not inconsistent with other substantial evidence . . . [it] will [be] give[n] controlling weight." 20 C.F.R. § 404.1527(c)(2).

In this case, while Dr. Nelson is identified as Plaintiff's physician in the Curley Evaluation, the Evaluation was confirmed and electronically signed by LMSW Curley. (T. at 501.) The Evaluation was not co-signed by Dr. Nelson, and there is nothing in the Evaluation lending support to Plaintiff's assertion that it was a joint submission by Dr. Nelson and LMSW Curley, or that Dr. Nelson had any input at all.[6] (T. at 493-501). *See Keith v. Astrue*, 553 F. Supp. 2d 291, 301 (W.D.N.Y. 2008) (notes by social worker that were co-signed by physician to be evaluated in accordance with the treating physician rule, while notes by social worker not co-signed by physician were to be evaluated in accordance with 20 C.F.R. § 404.1513.)

Furthermore, Plaintiff's medical records identify LMSW Curley as her primary clinician (T. at 444), and reveal that Dr. Nelson's involvement with Plaintiff was limited to signing Plaintiff's Individual Service Plan   Review of January 14, 2011, for another physician, a psychiatric evaluation on March 22, 2011, and a medication therapy session on My 24, 2011. (T. at 444, 457-460, 564.) Based on the foregoing, the Court concludes the ALJ properly treated the Curley Evaluation as being solely that of LMSW Curley. (T. at 25.) Furthermore, as discussed below, even if the Curley Evaluation were deemed to have been prepared jointly by LMSW

---

[6] Plaintiff contends that since Dr. Nelson's name was on the Curley Evaluation and Dr. Nelson supervised the therapy of LMSW Curley, if the ALJ doubted the origin of the report, he had the duty to follow up with Dr. Nelson before summarily dismissing the findings. (Dkt. No. 10 at 21.) While given the non-adversarial nature of a hearing on disability benefits, the ALJ has an obligation to develop the administrative record even when a claimant is represented by counsel, *Perez,* 77 F.3d at 47, the Court finds nothing in the Curley Evaluation or Dr. Nelson's medical records concerning Plaintiff that suggests the Curley Evaluation might have been prepared and submitted jointly by LMSW Curley and Dr. Nelson rather than LMSW Curley alone.

Curley and Dr. Nelson, and the treating physician rule found applicable, the Evaluation does not

provide a basis for rejecting the ALJ's listing determination.

### 4.    Restriction on Activities of Daily Living

Plaintiff relies on the "moderately severe" classification of Plaintiff's deterioration in

personal habits and constriction of interests in the Curley Evaluation, along with her testimony

that she no longer does housework or yard work and requires the daily assistance of a

caseworker, as support for her claim that the ALJ erred in failing to find a marked restriction on

her activities of daily living.  However, the Court finds that the Curley Evaluation does not

provide the support Plaintiff claims since LMSW Curley assessed the "[e]stimated degree of

restriction of claimant's daily activities, e.g., ability to attend meetings (church, lodge, etc.) work

around the house, socialize with friends and neighbors" as "moderate."  Furthermore, Plaintiff's

testimony that she cannot do housework or yard work, relied upon by Plaintiff, involved her

physical disabilities, not mental impairment.  (Dkt. No. 10 at 16; T. at 50.)  In addition, by her

own admission, Plaintiff requires the assistance of a caseworker only to help her with finances

and as someone she can "bounce things off."  (T. at 40.)  Plaintiff also testified that she goes

grocery shopping with her husband and picks out the groceries, which he carries, and that she

does some of the cooking.  (T. at 50.)

In any event, in order to successfully challenge the ALJ's assessment of her restrictions

on activities of daily living, Plaintiff must do more than offer evidence she believes counters that

relied upon by him.  She must show that the ALJ's determination is not supported by substantial

evidence.  *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there

is substantial evidence supporting the appellant's view is not the question here; rather, we must

decide whether substantial evidence supports the ALJ's decision.") (citations omitted). "[O]nce an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise.*'" *Brault v. Social Security Admin, Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis in original).

### 5. Difficulties in Maintaining Social Function

Plaintiff claims that the ALJ erred in finding that she has only moderate rather than marked difficulties in maintaining social functions. (Dkt. No. 10 at 16.) Plaintiff relies on Dr. Barry's November 13, 2009, diagnosis of "social phobia," and her notations that Plaintiff was fired from her prior job for making an inappropriate comment, along with Plaintiff's statement to her that she gets "very irritable" in support of her contention that the ALJ erred in failing to find that she has marked difficulties in maintaining social functioning. (Dkt. No. 10 at 16; T. at 345-48.) Plaintiff also relies on Dr. Malcolm's February 2010, classification of her as "very irritable and verbally abusive" (T. at 403); her March 22, 2011, comment to Dr. Nelson that she has had "marked irritability" (T. at 457); and the moderately severe classification with regard to responding appropriately to supervisors and co-workers in routine work situations and dealing with changes in routine work situations in the Curley Evaluation. (T. at 497.) (*See* Dkt. No. 10 at 16.)

While Dr. Barry did reference Plaintiff's statement to her that she gets "very irritable," her mental status examination found Plaintiff's "overall manner of relating and social skills [to be] fair." (T. at 346.) A review of Dr. Malcolm's psychiatric evaluation reveals that Plaintiff self-reported "some irritability where she becomes verbally abusive," not that Dr. Malcolm made that observation of Plaintiff. (T. at 403.) In fact, Dr. Malcolm found Plaintiff to be "pleasant"

and "cooperative." (T. at 404.)   As noted above, it was Plaintiff who self-reported "marked irritability" to Dr. Nelson in March of 2011, and not a finding made by Dr. Nelson.  (T. at 457-58.)  Dr. Nelson's evaluation notes that she found that Plaintiff's "manner was pleasant and open, with good eye contact and apparent enjoyment of telling her story."  (T. at 458.)  While the moderately severe assessment of Plaintiff's ability to respond appropriately to supervisors and co-workers and deal with routine changes in work could be seen as indicative of difficulties in maintaining social functioning, there is substantial evidence in the record showing that Plaintiff does not suffer from a marked difficulty in maintaining social functioning, including the evidence cited by the ALJ.

6.      Difficulties in Maintaining Concentration, Persistence, or Pace

The Court finds that Dr. Barry's psychiatric evaluation (T. at 345-348) and Dr. Totin's review (T. at 361-374) provide substantial evidence that Plaintiff does not have marked difficulties in maintaining concentration, persistence, and pace.  Plaintiff's challenge to the ALJ's mild rating of her difficulties is based upon the June 15, 2011, Curley Evaluation (T. at 500) and LMSW Curley's progress note in May 2011 (T. at 561) that notes Plaintiff was having problems with cognitive distortion.  *Id*.  The Curley Evaluation also includes assessment of Plaintiff as suffering from recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory.  (T. at 495).  In addition, Plaintiff points to the moderately severe classification of her limitation in performing complex or varied tasks during a work day, meeting production, quality, and attendance standards, and using judgment necessary for most jobs as set forth in the Curley Evaluation.  (Dkt. No. 10 at 16-17.)

Review of LMSW Curley's notations regarding Plaintiff's problems with cognitive

distortion reveal them to be general in nature and not useful in assessing the extent of her difficulties with maintaining concentration, persistence, and pace.  (T. at 500, 561.)  LMSW Curley's assessment of Plaintiff as suffering from anxiety with tension, apprehension, and interference with maintaining concentration and memory is likewise too general to provide a useful measure of Plaintiff's difficulties with concentration, persistence, and pace.  LMSW Curley's moderately severe classification of Plaintiff's limitations in matters associated with job performance does not attribute those limitations to difficulty maintaining concentration, persistence, and pace.

### 7.  Paragraph C

The ALJ determined that the evidence failed to establish the "paragraph C" criteria without reference to any evidence supporting his determination.  (T. at 24.)  Plaintiff challenges the ALJ's determination.  (Dkt. No. 10 at 17.)  To meet the "paragraph C" criteria, a claimant must show a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  Appendix 1 at § 12.04.

Plaintiff contends that she meets the requirements of "paragraph C" based upon being

treated for depression since 2001 and maintaining ongoing mental health management and therapy, along with evidence of a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." (Dkt. No. 10 at 17.) The Regulations define episodes of decompensation as "exacerbations or temporary increases in symptoms or signs accompanied by loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Appendix 1, § 12.00.C.4.

Plaintiff relies upon the Curley Evaluation in support of her residual disease process claim, specifically, LMSW Curley's assessment regarding Plaintiff's potential for decompensation or exacerbation caused by "work on a regular and competitive basis in a non-sheltered environment, even if low pressure, unskilled, and sedentary." (Dkt. No. 10 at 17.) However, the areas of potential decompensation or exacerbation are limited to Plaintiff's mood lability, social anxiety, sleep disruption, and psychomotor retardation, and there is nothing in the Curley Evaluation that suggests "even a minimal increase in mental demands or change in environment" would lead Plaintiff to decompensate to a degree that resulted in a loss of adaptive functioning sufficient to meet or medically equal an impairment in Listing 12.04.

In sum, although the ALJ did not provide a thorough explanation of his determination that Plaintiff does not have a listed impairment under Listing 12.04, the Court finds that substantial evidence supports his determination and that it is correct.

### B.     ALJ's Ruling on Residual Functional Capacity

The ALJ concluded the following regarding Plaintiff's RFC:

claimant occasionally lift/carry 20 pounds and frequently 10 pounds, sit for 6 hours in an 8-hour workday, stand/walk for 6 hours in an 8-hour workday and can occasionally engage in postural activities. She should avoid concentrated exposure to respiratory irritants and have access to bathroom facilities as needed. The claimant retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others, but should have limited contact with supervisors, coworkers or the public, and can handle reasonable levels of stress associated with simple work.

(T. at 24.)

Plaintiff argues that the ALJ erred in determining the RFC because his conclusions regarding Plaintiff's RFC failed to acknowledge the full breadth of her limitations; he failed to accept the opinions of her treating physicians Drs. Nelson and LoGalbo regarding her conditions; and he failed to properly assess Plaintiff's subjective allegations of pain and disabling symptoms. (Dkt. No. 10 at 23-26.) For the reasons below, the Court concludes that the ALJ erred only in the determination of Plaintiff's exertional capacity in the RFC, and that the error requires remand.

### 1. Residual Functional Capacity

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id.* § 404.1545(a). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. § 404.1569a(b).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2010). Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and non-exertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). "In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." *Roat*, 717 F. Supp. 2d at 267 (citation omitted). "RFC is then used to determine the particular types of work a claimant may be able to perform." *Whittaker*, 307 F. Supp. 2d at 440.

2. <u>Treating Physician Rule</u>

Part and parcel to the RFC determination is the ALJ's review of the medical opinion evidence and the credibility of Plaintiff. As noted above, the medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals. *See* 20 C.F.R. § 404.1527(c)(2). Medically acceptable techniques include consideration of a patient's report of complaints and the patient's history as essential diagnostic tools. *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight the Commissioner will give to the physician's medical opinions. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)(i)).

An opinion from a treating source that the claimant is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

An ALJ who refuses to give "controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). This analysis must be conducted to determine what weight to afford any medical opinion. 20 C.F.R. § 404.1527(c). This is necessary because the ALJ is required to evaluate every medical opinion received. *Id.*; *see also Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) (finding that the ALJ failed to satisfy the treating physician rule when he discounted a report because it was incomplete and unsigned).

These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and the opinions are contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner. *Snell*, 177 F.3d at 133.

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

3.    Credibility Assessments by the ALJ

"It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted).  In making a credibility determination, the hearing officer is required to take the claimant's reports of pain and other limitations into account.  20 C.F.R. § 404.1529(a); *Genier*, 606 F.3d at 49; SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).  The ALJ is required to consider all of the evidence of record in making his credibility assessment.  *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).

First, the ALJ must consider "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms."  SSR 96-7p, 1996 WL 374186, at *2.  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms.  *Id.*  If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  *Id.*  An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *See Grewen,* 2014 WL 1289575, at *4 (while a "claimant's subjective complaints are an important part of the RFC calculus . . . subjective symptomatology by itself cannot be the basis for a finding of disability . . ., [and] [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the

symptoms alleged."); *see also* 42 U.S.C. §§ 423(d)(5)(A); 20 C.F.R. § 404.1529(b); SSR 96-7p.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence." *Genier*, 606 F.3d at 49 (internal quotations omitted) (citation omitted); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p, at *5 ("One strong indicator of the credibility of [an individual's statements is their] consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier*, 606 F.3d at 50.

The ALJ must consider all evidence of record, including statements the claimant or others make about his impairments, his restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)). A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p, at *5. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ

must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve pain or symptoms; (5) other treatment received to relieve pain or symptoms; (6) any measures taken by the claimant to relieve pain or symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to pain or symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii); 416.929(c)(3)(i)-(vii).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis*, 62 F. Supp. 2d at 651 (quoting *Gallardo v. Apfel*, Civ. No. 96-9435 (JSR), 1999 WL 185253, at *5, 1999 U.S. Dist. LEXIS 4085, at *16 (S.D.N.Y. Mar. 25, 1999) (citing *Aponte*, 728 F.2d at 591-92; *Ferraris*, 728 F.2d at 587. "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on

particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621 (JSR) (FM), 2003 WL 470572, at *10, 2003 U.S. Dist. LEXIS 6988, at *29-30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999)); *Bomeisl v. Apfel*, Civ. No. 96-9718 (MBM), 1998 WL 430547, at *6, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").

4 Failure to Sufficiently Develop the Record as to Plaintiff's Exertional Capacity

The ALJ identified mild degenerative joint disease of left hip, left knee, and right shoulder as severe impairments. (T. at 21.) He found that Plaintiff had the residual functional capacity to "occasionally lift/carry 20 pounds and frequently 10 pounds, sit for 6 hours in an 8-hour workday, stand/walk for 6 hours in an 8-hour workday." (T. at 24.) In making his finding, the ALJ gave significant weight to Dr. Boehlert's opinions in her November 2009 consultative examination report. (T. at 26.) The weight given by the ALJ was based upon Dr. Boehlert's examination and expertise. *Id.* The ALJ noted that Dr. Boehlert found Plaintiff's gait was normal; she was able to walk on heels and toes, her squat was half way down with good strength; and she had full spinal flexion; a full range of motion of shoulders, elbows, forearms, wrists,

hips; and strength 5/5 in upper and lower extremities.[7]  (T. at 26, 350-51.)

As noted above, the RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Whittaker*, 307 F. Supp. 2d at 44; 20 C.F.R. §§ 404.1545, 416.945.  Dr. Boehlert offered no opinion as to how much weight Plaintiff could lift or carry either frequently or occasionally, or how long Plaintiff could sit or stand during an 8-hour workday, nor is there anything in her evaluation report indicating that she had observed or tested Plaintiff's capabilities or limitations with regard to occasional and frequent lifting and carrying or sitting and standing for extended periods of time.  (T. at 349-352.)   Therefore, to the extent the ALJ's determination was based on Dr. Boehlert's opinion, that opinion is not sufficiently detailed to support his RFC determination with regard to Plaintiff's exertional capacity.  *See, e.g., Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) (statement that claimant "'should be able to lift . . . objects of a mild degree of weight on an intermittent basis'" remarkably vague and insufficient to support light work RFC); *Correa v. Colvin*, No. 13-CV-2458 (JFB), 2014 WL 4676513, at * 7, 2014 U.S. Dist. LEXIS 132040, at * 16 (E.D.N.Y. Sept. 19, 1024) (remanding where medical report "did not mention, much less test or observe, plaintiff's capabilities or limitations with respect to sitting for an extended period"); *Archambault v. Astrue*, 09 Civ. 6363(RJS) (MHD), 2010 WL 5829378, at * 27, 2010 U.S. Dist. LEXIS 141458, at * 82 (S.D.N.Y. Feb. 17, 2011) (remanding and characterizing as "elusive"

---

[7]  The ALJ noted that the record also contained a physical residual functional capacity assessment by a non-examining Single Decisionmaker ("SDM") (T. at 26, 379-384).  The ALJ acknowledged that the assessment was not entitled to any significant weight because the assessment form and other findings by SDMs are not opinion evidence since they do not come from medical sources and are not considered opinions of non-medical sources as described in SSR 06-3p.  (T. at 26.)

ALJ's determination that claimant could sit for six hours, when primary report relied upon made no reference to sitting); *Longbardi v. Astrue*, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at * 35, 2009 U.S. Dist. LEXIS 111859, at * 116 (S.D.N.Y. Jan. 7, 2009) (ALJ's conclusion that plaintiff could perform sedentary work unsupported when there was no indication "that any test was conducted regarding plaintiff's ability to stand, walk or sit for the prolonged period of time required by sedentary work").

Additionally, the ALJ's exertional capacity finding is contrary to the assessment of Plaintiff's treating physician Dr. LoGalbo in the June of 2011 Medical Source Statement of Ability to do Work-Related Activities (Physical), in which she opined that Plaintiff could occasionally lift/carry less than 10 pounds and stand or walk less than 2 hours in an 8-hour workday. (T. at 517.) Dr. LoGalbo noted that Plaintiff's legs and knees shake after 10 minutes of standing; that she must periodically alternate sitting and standing to relieve pain or discomfort; and that her pain was present to such an extent as to be distracting to adequately perform daily activities of work, and physical activity such as walking, standing and bending greatly increased pain causing abandonment of task related to daily activities or work. (T. at 27, 516-20.)

A treating physician's opinion as to the nature and severity of a claimant's impairments is to be given controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory techniques [including patients' reports of complaints or history as essential diagnostic tools] and is not inconsistent with other substantial evidence in [the] case record. *Burgess*, 537 F.3d at 128. The ALJ gave little weight to Dr. LoGalbo's diagnostic findings because they were sparse, Plaintiff takes no significant pain medications or pain management and has no referral to a specialist, and Dr. LoGalbo's opinion was unsupported by the record or her

office notes.  (T. at 27.)

Dr. LoGalbo's office notes are sparse and largely illegible.  (T. at 428-30, 522.)  The records show that she began treating Plaintiff in November of 2010.  (T. at 428.)  Her November 29, 2010, examination of Plaintiff revealed complaints by Plaintiff of joint pain and her straight leg raising was 30 degrees on the left and 60 degrees on the right.  (T. at 428, 523.)  The notes indicate that Plaintiff showed tenderness over L1-2 and that she reported shoulder pain.  *Id.*  The Court finds the remainder of the November 29, 2010, notes dealing with Plaintiff's back and extremities to be illegible.  (T. at 428.)  Dr. LoGalbo's notes from May 2, 2011, indicate that Plaintiff had knee pain.  (T. at 527.)  As with the earlier notes, the notes regarding Plaintiff's back and extremities are largely illegible.  *Id.*  Dr. LoGalbo's notes from June 21, 2011, reveal weakened legs and straight leg raising of 90 degrees.  (T. at 529.)  X-rays ordered by Dr. LoGalbo that were taken on December 28, 2010, revealed minor degenerative spurring on L3-L5 with minor disc space narrowing and a mild leftward scoliosis at the upper mid-thoracic spine and mild degenerative disc disease.  (T. at 467.)

The lack of more specific clinical findings in Dr. LoGalbo's notes, does not, by itself, provide justification for the ALJ's failure to credit her opinion regarding Plaintiff' exertional limitations.  *Clark*, 143 F.3d at 118.  Moreover, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."  *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999).  Given the lack of substantial evidence in the record supporting the ALJ's RFC assessment of Plaintiff's exertional capacity, it was especially important that rather than reject outright Dr. LoGalbo's opinions, the ALJ develop the record regarding Plaintiff's exertional capacity by seeking additional information or an explanation from

Dr. LoGalbo to supplement her "sparse" diagnostic findings and provide support for her opinions. *See Rosa,* 168 F.3d at 79 (remanding where ALJ failed to fully develop record by neglecting to seek information or explanation to supplement treating physician's "sparse" notes which were "conclusive of very little") (internal quotation marks omitted)*; Schaal*, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte.*"); *see also La Torre v. Colvin*, No. 14 Civ. 3615 (AJP), 2015 WL 321881, at *12-13, 2015 U.S. Dist. LEXIS 8634, at * 33 (S.D.N.Y. Jan. 26, 2015) (remanding where there was insufficient evidence regarding the scope of claimant's work-related capabilities in that the consultative examining physician's report contained only his opinion that claimant had a "moderate restriction for stooping, squatting and strenuous exertion" but made no mention of her ability to do "a good deal of walking or standing," or lift objects weighing up to 20 pounds). The ALJ gives no indication in his decision that any attempt was made to elicit additional information from Dr. LoGalbo regarding her assessment of Plaintiff's exertional capacity.

The ALJ's exertional capacity finding is likewise contrary to Plaintiff's statements and testimony as to the intensity, frequency, and limiting nature of her impairments, which the ALJ found to be not totally credible because of the absence of probative evidence substantiating her subjective allegations of disabling symptoms. (T. at 27.) Plaintiff testified that she has arthritis in her shoulders, left knee and hip and is in pain just about every day; cannot lift her arms very high; that because of the degenerative arthritis in her knees she can't get back up once she gets down; has pain every day in her lower back because of bone spurs and in her neck; has problems with balance; can only do light lifting (when she does her laundry, she puts the pieces in and

33

takes them out one at a time); can only sit or stand for 15 to 20 minutes at a time; and does not think she could go back to her dishwasher job because she cannot stand that much anymore because her knees buckle.  (T. at 43, 46.)

The only testimony to which the ALJ appears to have given weight was described by him as testimony by Plaintiff that she could lift 20 pounds.  (T. at 27.)  However, Plaintiff's only testimony in that regard was that the heaviest weight she had to lift in her former dishwashing job was 20 pounds.  (T. at 41.)  There is no testimony by Plaintiff as to the frequency with which she was required to lift 20 pounds during a typical workday in her dishwashing job.

The ALJ found Plaintiff's statements as to the intensity, frequency, and limiting nature of her impairments not to be totally credible. (T. at 27.)   However, he failed to assess Plaintiff's subjective complaints, including her complaints of pain, by considering the record in light of the 7 symptom-related factors set forth in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii); 416.929(c)(3)(i)-(vii). Moreover, he neglected to set forth the reasons for his credibility assessment with sufficient specificity to enable the court to decide whether his rejection of Plaintiff's subjective complaints is supported by substantial evidence.  *See Lewis*, 62 F. Supp. 2d at 651.

Based upon the foregoing, the Court concludes that the ALJ's RFC finding with regard to Plaintiff's exertional capacity was not supported by substantial evidence; the ALJ committed legal error in failing to develop the record with regard to Plaintiff's exertional capacity by requesting additional information from Dr. LoGalbo; and the ALJ failed to assess Plaintiff's credibility in accordance with the regulations.  The Court therefore recommends that the case be remanded for further administrative proceedings in accordance herewith.

<u>RFC Determination Relating to Plaintiff's Mental Impairments</u>

Plaintiff argues that the ALJ failed to apply the correct legal standards in determining the

Plaintiff's RFC with regard to matters related to her mental impairments, and that the RFC is not

supported by substantial evidence.  (Dkt. No. 10 at 20-23.)  The Court disagrees.

The ALJ's RFC assessment found Plaintiff capable of "relat[ing] to and interact[ing]

appropriately with others" but that she "should have limited contact with supervisors, coworkers

or the public." (T. at 24.)  Plaintiff was also found able to "handle reasonable levels of stress

associated with simple work."  *Id.*  In determining the RFC, the ALJ gave significant weight to

the November 2009 psychiatric evaluation of consultant Dr. Barry based upon her examination

and medical expertise.  (T. at 25, 345-348.)  The ALJ some weight to the December 2009

opinion of non-examining State Disability Review Consultant Dr. Totin based on his program

familiarity and review of the record.  (T. at 25, 361-374.)  The ALJ then gave some weight to the

opinion of LMSW Curley in her June 15, 2011, evaluation based upon her special knowledge of

Plaintiff.  (T. at 25, 493-501.)

The opinions of State agency consultants, both examining and non-examining, can

constitute substantial evidence in support of an ALJ's findings.  *Frye ex rel. A.O. v. Astrue*, 485

F. App'x, 484, 487 (2d Cir. 2012).  "While a licensed social worker is not considered an

'acceptable medical source,' the SSA will, under 20 C.F.R. §§ 404.1513(d), 416.913(d), use

evidence from such sources to show the severity of the individual's impairment(s) and how it

affects the individual's ability to function.  SSR 06-03.  The evidence from 'other sources,' such

as the licensed social workers who [treat a claimant], cannot establish the existence of a

medically determinable impairment . . . but they can provide insights, based on the special knowledge of the individual, that they have acquired through their treatment." *Castillo v. Colvin*, No. 13 Civ. 5089 (AT) (MHD), 2015 WL 153412, at * 22, 2015 U.S. Dist. LEXIS 180222, * 63 (S.D.N.Y. Jan. 12, 2015) (internal quotation marks omitted). "Other source" evidence, including reports of social workers, "may play a vital role in the determination of the effects of impairment." SSR 85-16, 1985 WL 56855, at *4 (1985). Consideration of social workers' reports have been found to be particularly important where the social worker is the sole source that had a regular treatment relationship with the claimant. *White v. Com'r of Social Security*, 302 F. Supp. 2d 170, 176 (W.D.N.Y. 2004). Therefore, the ALJ properly relied upon the opinions of Drs. Barry and Totin and LMSW Curley in determining the Plaintiff's RFC.

> a. Application of the Treating Physician Rule with Regard to the June 15, 2011, Curley Evaluation

Plaintiff contends that the ALJ failed to apply the proper legal standards with regard to the weight to be given a treating physician, namely, Dr. Nelson, because the ALJ did not give controlling weight to her opinions in the June 15, 2011, Curley Evaluation. *Id*. at 24. Plaintiff raised the same argument in claiming error by the ALJ in failing to give controlling weight to the Curley Evaluation in determining that Plaintiff did not have a listed mental impairment under Appendix 1, § 12.04. As noted above, the Court rejected Plaintiff's assertion that the Curley Evaluation included the opinions of Dr. Nelson, who did not co-sign the Evaluation and whose involvement in Plaintiff's treatment was extremely limited in comparison with LMSW Curley, who was Plaintiff's primary clinician. The Court rejects Plaintiff's argument that the Curley Evaluation should be given controlling weight as Dr. Nelson's opinion with respect to the RFC

for the same reasons.

b.      Substantial Evidence

The RFC concluded that despite her mental impairments, Plaintiff "retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for tasks; regularly to attend to a routine and maintain a schedule; relate to and interact appropriately with others, but should have limited contact with supervisors, coworkers or the public, and can handle reasonable levels of stress associated with simple work." (T. at 24.) Plaintiff claims that the RFC is not supported by substantial evidence. The Court disagrees.

Dr. Barry diagnosed Plaintiff as having social phobia and depressive disorder. (T. at 348.) The ALJ noted that Dr. Barry found Plaintiff's social skills to be fair, her thought processes to be coherent, and her attention and concentration and recent and remote memory skills to be grossly intact. (T. at 25.) Dr. Barry opined that Plaintiff was able to follow and understand simple directions and instructions and maintain attention and concentration. *Id*. Dr. Barry noted that Plaintiff's affect was easily frustrated and somewhat dysthymic and her mood was dysphoric and down. *Id.* The ALJ also noted that Plaintiff had told Dr, Barry she had been fired from her last job for saying something inappropriate and has had difficulty at times handling stressors and had lately had difficulty with patience and gets along with others. *Id*.

Although not referenced by the ALJ in his decision, Dr. Barry's evaluation of Plaintiff's current functioning states that "The claimant has no patience. She has difficulty being around a lot of people. She gets into arguments . . . ." (T. at 346.) Dr. Barry noted in her evaluation that Plaintiff's allegations were consistent with the examination results. (T. at 347.) Dr. Barry also

opined that Plaintiff's prognosis was guarded. (T. at 25, 348.) Dr. Barry's opinion provides substantial evidence for the ALJ's assessment that Plaintiff's ability is limited to following simple instructions and directions and performing simple tasks, and having limited contact with supervisors, co-workers and the public, and to the reasonable level of stress that comes with simple work.

The ALJ noted that non-examining consultant Dr. Totin found Plaintiff had moderate difficulties in maintaining social functioning, moderate limitations in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism of supervisors, and to maintain socially appropriate behavior. (T. at 25, 371, 375-76.) Dr. Totin also noted that Plaintiff appeared easily frustrated and her mood was dysphoric and down. (T. at 373.) He found that Plaintiff appeared easily frustrated and had difficulty at times handling stressors. (T. at 373.) Dr. Totin opined that Plaintiff retained the capacity for simple work in a low contact setting. *Id*. Dr. Totin's opinion also provides substantial evidence for the ALJ's assessment of Plaintiff's capability as limited to simple work involving limited contact with others.

Plaintiff's medical records identify LMSW Curley as her primary clinician. (T. at 444.) Plaintiff testified that she has been seeing LMSW Curley for over a year and was seeing her every two weeks. (T. at 56.) The ALJ gave some weight to LMSW Curley's opinion. (T. at 26.) Specifically, he relied on LMSW Curley's opinion "that due to social anxiety and mood lability the claimant had mild limitation in her ability to perform work where contact with others would be minimal." (T. at 25, 497.) Plaintiff claims that the ALJ erroneously failed to give weight to the opinion in the Curley Evaluation that Plaintiff had moderately severe limitations in her ability

38

to respond appropriately to customary work pressure in a routine work setting; meet production, quality and attendance standards; use the judgment necessary for most jobs; respond appropriately to supervision in a routine work situation; and respond appropriately to co-workers in a routine work setting. (Dkt. No. 10 at 18-19; T. at 496-97.) The Plaintiff also argues that the ALJ failed to give weight to the opinion in the Curley Evaluation that Plaintiff's mental impairments would be exacerbated and her mood lability, social anxiety, and sleep disruption would decompensate if she tried to work on a regular and competitive basis in a non-sheltered environment even if the work was low pressure, unskilled, and sedentary; and that Plaintiff suffered from periods of anxiety with tension, apprehension and interference with concentration and memory. (Dkt. No. 10 at 18.)

While the ALJ did not address each of the foregoing opinions in his decision, his conclusion that there was nothing in the Curley Evaluation that precluded simple, low contact work, indicates that he reviewed and gave consideration to the entire Evaluation. (T. at 27.) The specific limitations included in the RFC, including that Plaintiff should have limited contact with supervisors, co-workers, and the public, and can handle only simple work with reasonable levels of stress associated with simple work reflect consideration by the ALJ of those parts of the Curley Evaluation relied upon by Plaintiff.

Plaintiff testified that she has been diagnosed with bipolar disorder and flies off the handle easily. (T. at 54.) However, she also testified that when she worked as a dishwasher, she was able to keep to herself and do her job without talking to her co-workers and dealt with her supervisor on a daily basis. (T. at 54-55.) The RFC recognizes Plaintiff's need to limit her contact with others. Furthermore, when the ALJ asked Plaintiff if she could go back to the

dishwashing job were it to become available tomorrow, her sole reason for saying she did not think she could was because she could not stand up that much anymore. (T. at 60.)

Based upon the foregoing, the Court finds that the RFC as it relates to Plaintiff's mental impairments, is supported by substantial evidence. Even if, as Plaintiff claims, there is substantial evidence supporting her objections to the RFC, because the ALJ's findings are supported by substantial evidence and a reasonable factfinder would not have to conclude otherwise, *Brault*, 683 F.3d at 448, they must be sustained.

### C.    ALJ's Determination that Plaintiff is Capable of Performing her Past Work as a Dishwasher as it was Actually Performed

Plaintiff claims that the ALJ improperly concluded that she could return to her past relevant work as a dishwasher as it was actually performed. (Dkt. No. 10 at 26-27.) The Plaintiff's argument is directed largely to her physical impairments with a single reference to the stress of her past job being too much for her when she was employed, and that it exacerbated her anxiety and social phobia. *Id.* at 27. According to Plaintiff, now that her condition has worsened, "she is unable to perform any work on a regular and competitive basis, much less work that falls into the medium exertion category." *Id.*

Plaintiff's argument with respect to stress and anxiety is duplicative of her challenge to the RFC rather being directed specifically to the dishwashing job, which Plaintiff continued to perform until her employment was terminated despite it being stressful. Because the Court is recommending remand with regard to the RFC exertional capacity assessment, the step four determination may need to be reexamined on remand based on new findings regarding the RFC exertional capacity assessment.

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings on the

pleadings be **GRANTED IN PART**, and that the case be **REMANDED** for further

administrative proceedings consistent with this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated: March 19, 2015
      Syracuse, New York

                    Thérèse Wiley Dancks
                    United States Magistrate Judge